"The deft. craves over of the writing obligatory and the condition afs'd., and of the said pretended assignment thereof." Notice given and copy demanded. Oyer of the said writing obligatory and condition thereof and assignment, had by the deft., and copy refused by the plaintiff; and thereupon the said Theodore Mitchell, adm'r. c. byc. prays the court to have the said writing obligatory and the condition thereof, and the said pretended assignment, so as afs'd. stated in said plaintiff's declaration, entered on the record.
These pleadings took plan in vacation, and —
Mr. Layton now moved the court to order an enrolment.
The question is, whether on a prayer and grant of oyer, we are entitled to a copy. The prayer of oyer does not spread the deed upon the record, (Eastern vs. Jones; supreme court, N.C.C.a nor can we avail ourselves of any defects in the deed itself, or in the, manner of pleading it, unless we can place the whole deed on the *Page 434 
record. "We wish to set it out in our plea, and a copy is necessary for that purpose. Without a copy or enrollment, the grant of oyer is of no *Page 435 
use to us. (2 Salk. 497,) a copy must be delivered to the deft. if demanded, on oyer prayed, 1 Sellon's Practice, 261, 264; 1 Saund. Rep. 9.
Wootten for pl'tff. The first demand in this case was of oyer *Page 436 
simply. This was granted. The def'dt. had the bond and read it. He then demanded that I should set out a copy of it on the record; this I refused, because I considered it irregular.
The court ordered a copy to be furnished the deft. at his own *Page 437 
expense, and said that they would stay proceedings in the cause, until it was made out, or otherwise compel the plff. to furnish it. The deft. must necessarily have a copy, to enable him to plead; for if he sets the bond out in his plea, he must do so correctly, or the plff. *Page 438 
may pray an enrolment and demur. The present prayer for an enrolment, does not come at a proper time, nor from the proper party; but the court will direct a copy to be given, which is all the *Page 439 
deft. needs to enable him to plead. He may then place the bond on record or not, as he pleases.
a The learning on this subject was very fully gone into in the case cited of Rufus Easton for the use of WilliamRussel vs. John Jones before the late supreme court. The case was argued by Rodney and Johns, Jr. for the pl'ff. and by Rogers for the deft.
Harrington, Chief Justice, delivered the following opinion of the court.
This is an action of covenant on articles of agreement, dated 10th of June, 1820, by which the deft. Jones, in consideration of $1000, the receipt whereof he acknowledges "in full for the work to be done," "agrees to build in a workmanlike manner and without unnecessary delay, any time during the season, if required to do so by said Easton, a brick house, in the town of St. Louis," of certain dimensions in said articles specified. At the end of the articles of agreement there is the following clause, of which no notice is taken in the declaration: "It is further understood that the house herein contracted for shall be built according to the plan which may be furnished by Rufus Easton, and should the house be of larger dimensions than above mentioned, then the difference shall be paid at the usual price of St. Louis." The deft. craves oyer of the writing, c. which is granted, and pleads, (without noticing the demand of oyer or setting out the articles,) First. That plff. did not at any time during the season after the making the writing obligatory aforesaid, nor at any time after the said 10th of June, 1820, require him to build a brick house in the town of St. Louis of the dimensions set forth in said articles of agreement, (specifying the dimensions.) Second. That plff. did not at any time during, c. or after, c.require him to build a brick house in, c. ofother dimensions than those set forth in said articles, (specifying them.) Third. That plff. did not at any time during the season after making the writing obligatory aforesaid, nor at any time after the said 10th of June, 1820, furnish the said John Jonesa plan for the building of a brick house of the dimensions set forth in said articles. Fourth. That plff. did not at any time, c.furnish him with the plan of any other brick house of greater or other dimensions than those set forth in said articles of agreement. All four of these pleas conclude to the country. To these pleas the plff. demurs generally and specially, and shows for cause of demurrer, First. That the said John Jones, after craving oyer of the agreement mentioned in the narr, has not set forth the same as he was bound to do. Second. That in his third and fourth pleas he has pleaded special negative pleas, and concluded to the country instead of verifying the same, c. Deft. joins in demurrer. First and second pleas. The defence set up by the first and second pleas is, that the plff. did not specially require the deft. to build for him a house of the dimensions stipulated, or of any other dimensions, as, according to the deft's construction of the agreement, he was bound to do. The plff. refuses to take issue upon these pleas, because he deems it to be wholly immaterial whether he ever required the deft. to build the house or not, as he was bound to build it without any special requirement. There is no doubt but that the object of pleading is to arrive at a certain point which will decide the controversy between the parties, which point must obviously be material and of the substance of the dispute. 1 Chitty 453; Stevens P. 150. The authorities cited by the plff's counsel are therefore all conceded; but the question is whether the issue tendered by these pleas is material, and, if accepted, would a decision of the point thus made have decided the whole cause? This depends solely upon a proper construction of the agreement: if the request be a condition precedent and it is incumbent on the plff. to require the deft. to build before the obligation on his part attaches, such request is material, of the very substance and the foundation of the plff.'s action. The materiality of these pleas is therefore to be determined by the covenants and stipulations of the parties, and the true rule of construction is to endeavor to collect the meaning of the parties and let that govern. 1 Sound. 61n. 1; 1 Chitty Pl. 312. The language of that part of the instrument to which these pleas apply, is, "that the said Jones, for and in consideration of the withinafter consideration, agrees to build, in a workmanlike manner and without unnecessary delay, any time during this season, if required to do so by said Easton, a brick house, in the town of St. Louis, of certain specified dimensions, and a subsequent part of the agreement states the consideration to be $1000, the receipt of which the deft. acknowledges "in full for the work to be done as aforesaid." Now what is the meaning of the parties as collected from this stipulation, "agrees to build," c.? Do the words "if required to do so by said Easton" refer to the general covenant to build. without unnecessary delay, or are they confined to the words immediately preceding, which form a more restricted covenant to build during the same season? For whose benefit were these words, "any time during this season, if required to do so by said Easton," introduced? Were they for the benefit of the deft.; intended to limit his obligation of building the house without unnecessary delay, and to make it obligatory on him to build only after being required to do so; or were they intended for the benefit of the plff. and to oblige the deft. to build the house not only without unnecessary delay but with extraordinary despatch, that same season, if required of him by the plff. The court cannot see any room to doubt the true construction of this branch of the agreement, either considering the plain common sense meaning of the words used, or the apparent intention manifested by the whole instrument. The parties were contracting for the building of a house at once; the money was to be paid before the work was done; the builder had already covenanted to execute the contract without unnecessary delay, and he then adds, "any time during this season if required to do so." Surely that construction cannot accord with the apparent intention of the parties which would make this to limit the obligation of the builder to proceed in the execution of his contract only upon his being specially required to do so. Such a construction supposes, too, that the parties contemplated the possibility of this house not being built at all, as it was not to be commenced until after request; a supposition wholly inconsistent with the fact that the money was paid in advance, and with the covenant for building without unnecessary delay. The court are therefore of opinion that unless this action had been brought for not building the house during the same season it was contracted for, no previous request was necessary to the foundation of the plff.'s action, and that consequently the deft.'s first and second pleas denying such request present an immaterial point, which, though decided for him, would not affect the plff.'s right of action. Third and fourth pleas. These pleas are founded on the following clause of the agreement, which is not set forth or stated in the declaration, to wit: "It is further understood that the house herein contracted for shall be built according to the plan which may be furnished by Rufus Easton, and should the house be of larger dimensions than above-mentioned, then the difference shall be paid at the usual price of St. Louis." The deft. has craved oyer of the writing obligatory, which was granted, and he then pleads that plff. did not furnish him with a plan for building this house, and concludes to the country. To this plea the plff. demurs, and shows for cause, that the deft. has not set out the deed after oyer, and that he has improperly concluded his plea to the country. This is a question of strict and technical pleading: on the one hand it is contended that the deed having never been set out in any of the pleadings, forms no part of the record, and the court can take no notice of this additional clause, which is the foundation of these pleas; on the other hand it is urged, either that the deed has been spread out upon the record, or that it was the duty of the plff. to have set, it out after oyer prayed and granted. This question demands the first consideration of the court; because, if the deed itself is not before us, it will be unnecessary to inquire what might be the effect of any covenants it may be said to contain.
The rules of pleading have been formed for the furtherance of justice. They are designed to compel the parties to present their claim or defence with logical correctness and precision before the court; to ascertain the real points in controversy, and to prevent the minds of the court and jury from being drawn off upon matters immaterial, irrelevant or unimportant to the true issue. The reasons in which these rules originated may not in every case be apparent; they may not strike at first view; but investigation seldom fails to justify the highest opinion of the science of special pleading as a system. In the common practice of our courts we have seldom occasion to use any thing more than its leading features and fundamental rules; occasionally, however, a case occurs like the present which is tried upon the more subtle distinctions and technical refinements of special pleading. When such cases do arise, it would not be surpising if slips should be made by the most learned and able counsel. The very existence of a dispute in this case as to which party is bound to set out an instrument after oyer, or whether the grant of oyer itself makes the deed a part of the record, upon which this cause was much argued, and on which it in fact in a great measure depends, can only be accounted for by the general looseness of our practice and the infrequency of technical controversy.
The order of pleading proceeds with regular steps to the production of an issue, each steps depending upon the previous; and if either party at any step deviates from this order, presents that which is immaterial, or insufficient to require an answer, the other party may demur, stop, refuse to proceed, and demand the judgment of the court upon the matter. Thus if a party declare upon a deed he need set out only so much of it in his declaration as is necessary to establish his claim. If he do not set out so much the other party may demur; if the defect appear upon the declaration he may demur at once; if it do not so appear without the production of the deed declared on or of some other paper, proper steps must be taken to make such deed or other paper a part of the record, in order that the court may judge upon it in connection with the declaration. 3 Saund. Rep. 704,n. 1; Chitty Pl. 119, c.
If a party in his declaration refer to a deed with a profert incuriam, the deed is by intendment of law in court during all the term after profert is so made; and after the term if the deed be not denied it is returned to the plff. By profert the deed is shown to the court in order that they may see it is a valid deed, but not to the party deft.; who, if he want to see it, must crave oyer. The craving of oyer is a kind of plea and may be counterpleaded, and the grant or refusal of oyer is a judgment of the court. If the court refuse oyer when it ought to be granted a writ of error will lie. The judgment of the court granting oyer is, that the deft. shall have the deed read to him, and, according to some of the authorities, that he shall have a copy of it that he may consider of his plea. Having heard the deed read, or received a copy of it, if the deft. wishes to make any use of it in his defence, he must set it out in his plea. But he is not bound so to set it out. He may after oyer prayed and granted take no notice of the oyer or of the deed and plead the general issue or any other plea; but he must set it out if he would avail himself of any thing contained in it. And it sometimes happens that after oyer prayed, the deft. pleads without setting out the deed and it becomes necessary for the plff. to get upon the record other parts of the deed not set out in his narr. in which case he must pray an enrolment, for he cannot crave oyer of a deed in his own possession, nor is he at liberty to set it out on the deft.'s oyer. He therefore prays an enrolment, which being granted he sets the deed out in his replication. From all which it is evident that the mere craving of oyer, though granted, does not make a deed a part of the record, and that it is incumbent on the party craving oyer to set out the deed in his pleading if he would make any use of it. And so are all the precedents. In the numerous instances inSaunders' Reports, the oyer is always stated in the plea after the appearance and defence, and the deed is then set out in the body of the plea. 1 Chitty, 418; 2 Strange, 1186; 1Wils. 16; 1 Tidd, 528, 531; Steph. Pl. 88; 5Cranch, 257; 1 Chitty, 418; 2 Sir. 1241; 1Wils. 97; 1 Chitty, 419; 3 Saund. R. 704,n. 1; Dougl. 476.
The case of Wallace vs. the Dutchess of Cumberland,
cited by Mr. Rodney, is referred to in 2 Strange as qualifying the decision there made in the case of the Weaver'sCompany vs. Forrest, et al. But the cases stand very well together, the true rule being that laid down in 1 Chitty 420, that if the deft. assume to set out the whole of a deed, the whole shall be stated verbatim et literatim, and if he do not set out the whole, or state it untruly, the plff. may sign judgment as for want of a plea. Still he may elect whether he will set out the deed or not. And this rule is in accordance with all the precedents, and with the practice as stated by Chitty in page 421 — "When oyer is prayed of a bond and the condition, it is usual in practice not to set forth the bond, but to say, "and it is read to him, c." and then to pray oyer of the condition and set it forth in haec verba.
It being therefore obligatory on the party who would take advantage of any covenant in a deed not disclosed by the declaration to set it out in his pleading after oyer, the question is, has the deft. in this case done so? Does this instrument in fact form any part of the record upon which the court are to make their decision? At the argument of the cause, and since, "we have been favored with an inspection of the original deed; but this, according to the rules before stated, belongs to the party plff. and comes to us. from his possession and by his permission. It can form no part of the record, unless we were to suppose that by consent of parties the original had been substituted for a more formal enrolment of "it in the pleadings, of "which we have no evidence, and which the very ground of the demurrer, and the points made in the arguments, deny. The only record entry in relation to it is, that Oyer was prayed and granted, which is the mere docket note of the clerk referring to pleadings more at large, and does not, according to the principles already laid down, make the subject of that oyer a part of the record. The foundation therefore of the 3d and 4th pleas failing, judgment must be given for the plff. on the demurrer.
This obviates the necessity of deciding upon the effect of the concluding clause of the agreement, whether it constitutes a condition precedent the performance of which ought to have been averted in the declaration; or of the other point made in the argument that these 3d and 4th pleas conclude improperly to the country. But, as we have had sufficient leisure to examine this case, and considered the investigation rather interesting, we have formed an opinion on both these points, which we have no objection to intimate though it be not necessary to decide them.
There are few subjects in the law which have run out into greater abstruseness than this matter about conditions precedent, concurrent and independent covenants. The cases on the subject are numerous and at variance with each other. In some of the later cases the learned judges have declared them to be irreconcileable in principle, but they impute the contradiction in these determinations not to be a denial but a misapplication of the principle which professes to govern them all. In the leading case of Morion vs. Lamb 7 Durnf. andEast, 130, Grose Justice says, "it is" difficult to reconcile all the cases in the books on the subject of conditions "precedent, but the good sense to be extracted from them all is, if one party "covenant to do one thing in consideration of the other party's doing another, each must be ready to perform his part of the contract at the time "he charges the other with the non-performance." So Chitty in his pleadings lays down the rule thus. — "In general if the agreement be that one" party shall do an act and thatfor the doing thereof the other shall pay a "sum of money, the doing of the act is a condition precedent to the payment."Chitty, Pl. 312. The rule here laid down by the learned judge and author is very sound, but it is not extensive enough to cover even adjudged cases of acknowledged authority. They both make it necessary that the precedent act or thing to be performed, should constitute theconsideration of the subsequent obligation, whereas in an extensive class of cases the precedent act has no connection with the consideration. As in the case before us: the furnishing' a plan is no part of the consideration of the deft.'s covenant to build the house, and yet it is an act which the plff. has undertaken to perform, and which from the very nature of the thing must be done before the deft. can execute his contract. For we cannot adopt the idea thrown out by the pl'ffs.'s counsel in the argument that this last clause merely gave him the privilege of furnishing a different plan from one before contained in the agreement; the agreement furnishes no plan
but only the dimensions of the building to which the plff. was to adopt his plan, or if he enlarged them he was to pay for it additionally. This case therefore comes not within the rule extracted by Chitty from Morton vs. Lamb and other cases, and yet it presents the case of a duty so clearly and necessarily precedent in its character that a court would hesitate much to declare it an independent covenant, even if it did not, as it does, come within the range of other cases of authority. Willes Rep. 496;Yel v. Rep. 76.
As to the other points; the conclusion of the pleas. It was contended by the deft.'s counsel that after a deed is set out upon Oyer, it becomes a part of the pleading previous, as when it is set out in the plea it is made a part of the narr: — that the general averment of the performance on the part of the plff. in his narr. embraces the matter of the plea, and there being now an affirmative and a negative, the plea must conclude to the country. The rule is correctly laid down that "if a deed be set out in the plea the deft. thereby makes it a part of the plff.'s declaration." But he does not thereby bring every thing in the deed under the plff.'s general averment of performance; else he would cure the defect in the declaration wherever it wanted such averment. If a plff. fail to aver performance of a condition precedent, the invariable practice and the proper course, is for the deft. to set out the deed so as to show the condition precedent and demur. When a party covenants to do any thing on request the general averment of licet soepius requisitus is not sufficient, but a special request must be shown, so in all cases of conditions precedent the performance of them is not covered by the general allegation of performance, but it must be specially averred. So you cannot go to issue upon a general allegation of performance. As in the case of Sayre et al. vs. Minus, which is precisely in point: — That was an action of debt by a Sheriff against an under Sheriff on his official bond: deft. pleaded performance generally; plff. replied a particular warrant of which deft. ought to have made due return, but neglected, c. and this plea concluded to the country on the ground that it answered the general allegation of performance. It was demurred to for this cause; and Ld. Mansfield said "I take this to be a rule in pleading, that you cannot go to issue on a general allegation of performance. "The conclusion was therefore held wrong." 2 Cowp. 575; Archb. 187; 2 Saund. 316 c. 1 Chitty 417; 3 Saund. Rep. 698; [36.1.] Archb. 102; 1 Chitty 324 Step. PL 252; 3 Burr. 1725.
But supposing these pleas ought to have concluded with a verfication, as we think they ought, upon a demurrer the court will look into the whole record, and give judgment against the party whose pleading was first defective in substance; 1 Chitty 662; if therefore the court were to consider this deed as a part of the record, and the clause of it which we have construed a condition precedent as at all before the court, we should undoubtedly resort to the declaration where the first slip occurs in the failure to set out this condition precedent, and to aver performance or that which would excuse the performance of it. But for the reasons before assigned; judging of the record as we find it, the Plff. must have judgment on his demurrer.
After the opinion of the court was pronounced the deft.'s counsel moved for leave to plead over which the court refused. The parties came to the argument of the demurrer with an avowal that the determination of the cause rested upon it; the argument involved a construction of the contract; the deft. adhered to his pleading until after solemn argument and a whole vacation taken by the court to consider, the opinion of the court has been pronounced, and the judgment if not actually entered, at least ordered; the plff. has been delayed two terms by this proceeding; and the practice of allowing amendments at this stage of the proceedings if generally adopted, would produce endless delay. The defence set up in this cause is not of a character to entitle it to peculiar consideration, being only evasive of the obligations imposed on deft. by his contract, and for which he has been paid; and he still has an opportunity for any just defence before the jury of inquiry.
 Motion refused.